## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**JOHN DAVID LILLY,**       )
                                   )
       **Plaintiff,**          )
                                   )
**v.**                                 )      **Civil Action No.** <u>2:19-cv-00189</u>
                                   )
**COTY CRUM,**             )
**Individually as a member of the**    )
**Logan County Sheriff's Department, and** )
**ZACHARY LILLY,**         )
**Individually as a member of the**    )
**Logan County Sheriff's Department,**  )
                                   )
       **Defendants.**       )
_____)

## COMPLAINT

**COMES NOW**, Plaintiff John David Lilly, by counsel, and for his Complaint states and alleges as follows:

### JURY DEMAND

1. The Plaintiff hereby demands a trial by jury.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343 and under this Court's authority to decide pendent state law claims.

3. Plaintiff files this Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Specifically, Plaintiff alleges that his rights under the Fourth Amendment to the United States Constitution and under Article III, Section 6 of the West Virginia Constitution were violated by Defendants when they used excessive and unreasonable force during the detainment and arrest of Plaintiff on May 21, 2018 in Logan County, West Virginia.

4.     Venue is proper because the above-named Defendants reside within the Southern District of West Virginia, Charleston Division, and the incident giving rise to this Complaint occurred in the Southern District of West Virginia, Charleston Division.

<u>**PARTIES**</u>

5.     Plaintiff John David Lilly (hereinafter "Plaintiff") was at all times relevant hereto a resident of Logan County, West Virginia.

6.     Defendant Coty Crum (hereinafter "Deputy Crum") was at all times relevant hereto an officer with the Logan County Sheriff's Department and was at all times relevant hereto acting under color of law and within the scope of his employment.  Deputy Crum, who upon information and belief, resides in Logan County, West Virginia, is sued in his individual capacity.

7.     Defendant Zachary Lilly (hereinafter "Deputy Lilly") was at all times relevant hereto an officer with the Logan County Sheriff's Department and was at all times relevant hereto acting under color of law and within the scope of his employment.  Deputy Lilly, who upon information and belief, resides in Logan County, West Virginia, is sued in his individual capacity.

8.     Defendants are sued up to the limits of the insurance policy which provides liability coverage for their actions and omissions.

9.     During the unlawful beating endured by Plaintiff at the hands of Defendants, one or more of Defendants was either involved in the physical beating or watched the abuse without taking any action to intervene.  In this Complaint, "Defendants" will be used to collectively describe the involvement of one or more of the Defendants in either the physical beating of Plaintiff or in the failure to intervene to prevent the other Defendant(s) from injuring Plaintiff.

## FACTS

10.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 9 as though fully set forth herein.

11.     On May 21, 2018, at approximately 9:20 p.m., Plaintiff and his girlfriend, Holly Green (hereinafter "Ms. Green"), were walking down Wood Avenue, adjacent to Route 10, in West Logan, West Virginia.

12.     At approximately 9:23 p.m., Logan County 911 received a call reporting a woman passed-out on Wood Avenue behind the Family Dollar Store.  A subsequent 911 call was made reporting Plaintiff and Ms. Green arguing behind the Family Dollar Store.

13.     Soon thereafter, Deputy Crum (Unit 17) and Deputy Lilly (Unit 18) arrived on the scene.

14.     At 9:25 p.m., Deputy Crum radioed central dispatch and reported an "irate male" and stated that he was "going to see if we can try to contain him."

15.     Central dispatch asked Deputy Crum if he "can advise if that's Lilly and the Green individual," to which Deputy Crum replied, "[n]egative...we didn't know him."

16.     At 9:26 p.m., Deputy Crum radioed central dispatch and advised that they have a "male 10-89."  Upon information and belief, 10-89 is code for "subject in custody."

17.     At or around this time, after a verbal altercation with the Deputy Crum and/or Deputy Lilly, Plaintiff was handcuffed and placed in the back of Deputy Crum's police cruiser.

18.     While handcuffed in the backseat of the police cruiser, Plaintiff was sprayed in the face with pepper spray by Deputy Crum.

19.     Soon thereafter, Deputy Crum opened the rear driver's side door of the police cruiser and got into the backseat with Plaintiff.

20.     Then, while in the backseat of the police cruiser, Deputy Crum, without cause or justification, relatedly beat Plaintiff (while still handcuffed) on the left side of his head, face, neck, shoulder, arm, and torso with his fists.

21.     Upon information and belief, Deputy Crum was wearing weighted lead or steel knuckle gloves during the beating of Plaintiff.

22.     While Deputy Crum was in the backseat of the police cruiser beating Plaintiff, Deputy Lilly laughed and filmed the incident from the front seat with his cell phone.

23.     During the beating, Plaintiff repeatedly begged Deputy Crum to stop.

24.     Deputy Crum beat Plaintiff for several minutes, until he finally got tired and stopped.

25.     Deputy Crum beat Plaintiff until he crumpled over on his right side in the backseat of the police cruiser, unable to move.

26.     After the beating finally stopped, Deputy Crum told Plaintiff, "if you spit on my gym bag [in the back seat], I'll give you another dose."

27.     Deputy Crum also told Plaintiff, "you tell anyone about this, next time it will be ten times worse."

28.     At no point during his detainment and arrest was Plaintiff armed or suspected of being armed.

29.     At no point during his detainment and arrest did Plaintiff attack or assault Deputy Crum or Deputy Lilly.

30.     At no point during his detainment and arrest did Plaintiff resist arrest.

31.     At no point during his detainment and arrest would an objectively reasonable officer believe Plaintiff posed an immediate threat to the safety of Defendants or anyone else.

- 4 -

32.     At 9:37 p.m., Deputy Crum radioed central dispatch and said, "[g]et a hold of Unit 10 and see if he can come on out."  Upon information and belief, Unit 10 refers to Logan County Sheriff's Deputy Joey Sheppard (hereinafter "Sargent Sheppard").

33.     Upon information and belief, Sargent Sheppard was a supervisor and/or the superior officer of Deputy Crum and Deputy Lilly.

34.     At 9:39 p.m., central dispatch phoned Sargent Sheppard (who was evidently at home) and advised that he needed to "come out early."

35.     Central dispatched advised Sargent Sheppard that a call came in about Plaintiff and Ms. Green arguing, and that officers were called to the scene.

36.     Central dispatch further advised Deputy Sheppard that, "Zach [Lilly] might have a use of force..."

37.     At 9:41 p.m., Deputy Crum radioed central dispatch and said, "have him [Sargent Sheppard] meet us at the office there, fourth floor."

38.     At 9:54 p.m., Deputy Crum radioed central dispatch and advised that, "I'll be 10-89 [in custody] with one male 10-76 [en route] from this location to Sheriff's Office for processing."

39.     At 9:55 p.m., Sargent Sheppard radioed central dispatch and advised that he was "at the office."

40.     Shortly thereafter, at 9:57 p.m., Deputy Crum radioed central dispatch and advised that he was "at the Sheriff's Office for processing," while Deputy Lilly advised he "will be there shortly as well."

41.     At 10:09 p.m., while Plaintiff was at the Logan County Sheriff's Office, Sargent Sheppard radioed central dispatch and requested that a background search be run using Plaintiff's date of birth and social security number.

42.     According to the Logan County 911 CAD Report, a search of Plaintiff's identifying information revealed "[n]o conclusive record found...Six records are for officer safety only and not cause for arrest or detention."  In other words, Plaintiff had no outstanding warrants.

43.     At 10:19 p.m., Plaintiff was taken from the Logan County Sheriff's Office to Southwest Regional Jail by Sargent Sheppard.

44.     The following morning, on May 22, 2018, Plaintiff was evaluated by the medical staff at Southwest Regional Jail.

45.     A Southwest Regional Jail telephone/verbal medical order noted at 8:38 a.m. that Plaintiff was "involved in [an] altercation prior to coming to jail resulting in injuries," and that there was a "[l]arge amount of edema [swelling] noted to left jaw area and left ear, gurgling auscultated to left middle [lung] lobe, complaints of severe rib pain, [and] shortness of breath."

46.     A Southwest Regional Jail chart note at 8:46 a.m. likewise reported a "large amount of edema [swelling] observed to left side of facial area...[l]arge amount of edema and ecchymosis noted to left ear...bruising noted to left rib cage area...[l]ung sounds auscultated with gurgling noises noted to left side lobe."  The chart also reported Plaintiff complaining of "severe pain and shortness of breath."

47.     Soon thereafter, because of his bad physical condition, Plaintiff was transported to Logan Regional Medical Center by ambulance.

48.     At approximately 8:52 a.m., a Logan County Emergency Ambulance arrived at Southwest Regional Jail to transport Plaintiff to Logan Reginal Medical Center.

49.     A Logan County Emergency Ambulance Report provides that, "PT [patient] states he was injured by the arresting officer.  PT states the officer struck him on his left side with bare fist, injuring his rib."

50.     Plaintiff arrived at Logan Regional Medical Center at approximately 9:16 a.m. on May 22, 2018.

51.     At the Emergency Room at Logan Regional Medical Center, Plaintiff continued to complain of left-sided head, face, ear, shoulder, chest, and arm pain.

52.     An ER Nurse's Note from Logan Regional Medical Center reported Plaintiff having "pain in his left rib area with abrasions to the left side of his face and head, also has dried blood and swelling to the left ear."

53.     The ER Nurse's Note also reports that Plaintiff was a victim of "abuse."

54.     The ER Nurse's Note further states that Plaintiff's "mechanism of injury" was "[a]ggravated assault with fists."

55.     An ER Physician's Note from Logan Regional Medical Center states that, "[p]atient is here today complaining of left-side rib pain as well as left ear and head pain."

56.     The ER Physician Note goes on to state that, "[h]e reports he was in an altercation with law enforcement approximately 9-10 hours ago."

57.      At the ER, Plaintiff was given fentanyl and dilaudid for pain.

58.     After various radiological scans, Plaintiff was diagnosed with a "traumatic" collapsed left lung, multiple fractured and displaced left-side ribs, air and blood in his chest cavity, and "legal intervention involving mishandling, suspect injured."

59.     At approximately 11:23 a.m., due to the severity of his injuries, Plaintiff was transported by Logan County Emergency Ambulance to Pikeville Medical Center for elevated trauma care.

60.     A Logan County Emergency Ambulance Report states that Plaintiff was suffering from multiple rib fractures, pneumothorax (a collapsed lung), and hemothorax (blood in the pleural cavity).

61.      The Ambulance Report states that, "patient requires a trauma center and trauma specialists."

62.     The Ambulance Report further states that, "[d]ue to severe pain patient is given 100 mg of fentanyl."

63.      Plaintiff arrived at the Emergency Room at Pikeville Medical Center at approximately 12:50 p.m. on May 22, 2018.

64.     Pictures taken of Plaintiff after he was admitted at Pikeville Medical Center depict Plaintiff's condition as a result of the brutal beating inflicted by Deputy Crum:







65.    At Pikeville Medical Center, Plaintiff's chief complaint was listed as "assault."

66.    Plaintiff was admitted to the ICU with "major chest trauma," where he was initially diagnosed with "multiple fractures [four] of ribs, left side," "traumatic hemothorax" (blood in plural cavity), "traumatic hemopneumothorax" (air and blood in chest cavity), "plural effusion" (fluid in lungs), "traumatic subcutaneous emphysema (air under skin in chest, neck, and face)" "left ear hematoma (collection of blood)," "contusion of left ear," and "assault by other specified means."

67.    The ICU history of present illness states that Plaintiff was "assaulted by police officers in Logan, West Virginia."

68.    After being closely monitored for several days, an open incision and drainage surgery was performed on May 24, 2018 to drain the hematoma around Plaintiff's left ear.

69.     On May 24, 2018, surgery was also performed to insert a chest tube to drain air and blood from Plaintiff's left pleural cavity.

70.     Over the next several days, Plaintiff was continuously watched in the ICU and numerous radiological scans were performed to monitor his condition.

71.     Plaintiff was discharged from Pikeville Medical Center on May 29, 2018.

72.     Upon information and belief, Defendants showed the video taken by Deputy Lilly of Plaintiff being beating by Deputy Crum to others.

73.     Prior to being taken to the hospital, while in a holding cell at Southwest Regional Jail, an inmate said aloud to a group of inmates, "you will never believe what the officers who arrested me showed me."  When asked by someone "what," this inmate responded that he, "saw a video of them [the officers] beating the hell out of a Lilly boy."

## COUNT I – EXCESSIVE FORCE UNDER 42 U.S.C. §1983

74.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 73 as though fully set forth herein.

75.     Defendants, while acting under color of law and within the scope of their employment as Logan County Sheriff Deputies, violated Plaintiff's constitutional rights by using excessive and unreasonable force, as described hereinabove, during the detainment and arrest of Plaintiff on May 21, 2018, resulting in serious bodily injuries.

76.     The actions of Defendants violated the constitutional rights guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution.

77.     The actions of Defendants were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

78.     At all times relevant hereto, Defendants did not have a reasonable fear of imminent bodily harm from Plaintiff, nor a reasonable belief that any other person was in danger of imminent bodily harm from Plaintiff, as Plaintiff was unarmed and handcuffed in the backseat of Deputy Crum's police cruiser when he was violently beaten.

79.     Defendants' brutal acts were unlawful, unreasonable, and unjustified, as Plaintiff was unarmed, not resisting arrest, handcuffed, and posed no immediate threat to the safety of Defendants or anyone else.

80.     As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional beating, Plaintiff suffered severe, permanent, and debilitating injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

81.     In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

82.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT II – STATE CONSTITUTIONAL VIOLATIONS

83.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 82 as though fully set forth herein.

84.    Defendants, while acting under color of law and within the scope of their employment, violated Plaintiff's constitutional rights by using excessive and unreasonable force, as described hereinabove, during the detainment and arrest of Plaintiff on May 21, 2018, resulting in serious bodily injuries.

85.    Count II alleges a constitutional tort action under the West Virginia Constitution, pursuant to the common law of West Virginia, and specifically is not filed pursuant to 42 U.S.C. § 1983 or any other related federal statute.

86.    The actions of Defendants violated the constitutional rights guaranteed to Plaintiff under Article III, Section 6 of the West Virginia Constitution.

87.    The actions of Defendants also violated the constitutional rights guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution.

88.    Pursuant to W. Va. Code § 29-12A-18, by alleging violations of the West Virginia and United States Constitution, the Governmental Tort Claims and Insurance Reform Act is inapplicable to the claims against Defendants.

89.    The actions of Defendants were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

90.    At all times relevant hereto, Defendants did not have a reasonable fear of imminent bodily harm from Plaintiff, nor a reasonable belief that any other person was in danger of imminent bodily harm from Plaintiff, as Plaintiff was unarmed and handcuffed in the backseat of Deputy Crum's police cruiser when he was violently beaten.

91.    Defendants' brutal acts were unlawful, unreasonable, and unjustified, as Plaintiff was unarmed, not resisting arrest, handcuffed, and posed no immediate threat to the safety of Defendants or anyone else.

- 13 -

92.     As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional beating, Plaintiff suffered severe, permanent, and debilitating injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

93.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**COUNT III – BATTERY**
(***Deputy Crum***)

94.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 93 as though fully set forth herein.

95.     Deputy Crum committed battery upon Plaintiff, proximately causing sever and debilitating injuries.

96.     As a direct and proximate result of Deputy Crum's brutal, unprovoked, and unjustified beating, Plaintiff suffered severe, permanent, and debilitating injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

97.     The actions of Deputy Crum were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award

of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT IV – NEGLIGENCE

98.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 97 as though fully set forth herein.

99.     At all times relevant hereto, Defendants owed Plaintiff a duty of care.

100.    Defendants, while acting within the scope of their employment, breached their duty of care to Plaintiff.

101.    As a direct and proximate result of Defendants' breach of their duty of care, Plaintiff suffered severe and debilitating bodily injuries.

102.    As a direct and proximate result of Defendants' brutal, unprovoked, and unjustified beating, Plaintiff suffered severe, permanent, and debilitating injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

103.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 103 as though fully set forth herein.

105.    Defendants' excessive and violent actions toward Plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

106.    Defendants acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

107.    Defendants' heinous actions caused Plaintiff to suffer severe emotional distress.

108.    The emotional distress was so severe, no reasonable person could be expected to endure it.

109.    As a direct and proximate result of Defendants' brutal, unprovoked, and unjustified beating, Plaintiff suffered severe emotional distress; mental and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

110.    The actions of Defendants against Plaintiff were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendants in an amount to be proven at trial, together with pre-judgment and post-judgment interest; for all damages recoverable under law; for punitive damages; for his attorneys' fees under 42 U.S.C. § 1983; for his expenses and costs of litigation; and for such other and further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

- 16 -

**JOHN DAVID LILLY**
**By Counsel**


*/s/ Russell A. Williams*
WV State Bar No. 12710
Katz, Kantor, Stonestreet & Buckner, PLLC
112 Capitol Street, Suite 100
Charleston, WV  25301
(304) 431-4053
rwilliams@kksblaw.com