UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOHN DAVID LILLY,

       Plaintiff,

v.                                Civil Action No. 2:19-cv-00189

COTY CRUM, Individually as a
member of the Logan County
Sheriff's Department, and
ZACHARY LILLY, Individually as
a member of the Logan County
Sheriff's Department,

       Defendants.

MEMORANDUM OPINION AND ORDER

       Pending is a motion for summary judgment filed by defendants Coty Crum and Zachary Lilly on January 2, 2020.

## I.   Background

       This case arises from plaintiff John David Lilly's May 21, 2018 arrest and alleged police brutality of defendants Coty Crum ("Deputy Crum" or "Corporal Crum")[1] and Zachary Lilly ("Deputy Lilly"), police officers with the Logan County Sheriff's Department.  On the night of May 21, 2018, plaintiff and his girlfriend, Holly Green, were drinking at her father's

---

[1] Deputy Crum was promoted to the rank of Corporal in February 2019.  See Crum Dep. 9:9-12, ECF No. 49-2.

house in West Logan, West Virginia.  Pl.'s Dep. 17:4-23, ECF No. 49-1 ("Pl.'s Dep."); Pl.'s Am. Resp. 1, ECF No. 54 ("Pl.'s Am. Resp").  The two of them got in a verbal argument as they were walking over to a friend's house, and Ms. Green ended up passing out on the side of the road near a parked car on Wood Avenue. Pl.'s Dep. 20:1-22:1.

        Around this same time, defendants received a 911 call from Kimber Hall reporting that a woman, later identified as Ms. Green, was "walking erratically" and was "laying in the alley" behind Ms. Hall's residence on Wood Avenue.  <u>See</u> Incident Report, ECF No. 49-10.  Upon defendants' arrival at the scene, Ms. Green was drifting in and out of consciousness, leading defendants to request an ambulance dispatch.  <u>Id.</u>  Plaintiff, who had been standing in the alley, told the officers that Ms. Green passed out from drinking and had not overdosed on any drugs.  Pl.'s Dep. 24:14-18; 25:21-26:3.  The officers soon thereafter handcuffed plaintiff and placed him in the back of the police cruiser.  <u>Id.</u> at 26:23-27:17.  Plaintiff began yelling and screaming in the back of the car protesting his arrest, and he continued to yell and scream even after Deputy Crum opened the car door and administered pepper-spray.  <u>Id.</u> at 29:2-24.

Plaintiff testifies that Deputy Crum then opened the car door for a second time, sat in the backseat, and repeatedly punched plaintiff in the side of the head, torso, and legs. Pl.'s Dep. 30:10-32:16. The alleged beating lasted approximately 30 seconds to a minute as plaintiff remained handcuffed in the car and as Deputy Lilly filmed the beating on his cellphone. Id. at 28:15-16; 32:12-16; 33:18-34:12; 43:11-19; see also Compl. ¶¶ 11-27, ECF No. 1 ("Compl.").

Plaintiff also relies on allegations in the complaint quoting the medical evaluations he received after the incident. Pl.'s Am. Resp. 2-3. The next morning on May 22, 2018, the medical staff at Southwest Regional Jail noted that plaintiff was "involved in [an] altercation prior to coming to jail resulting in injuries," and that there was a "[l]arge amount of edema [swelling] noted to left jaw area and left ear, gurgling auscultated to left middle [lung] lobe, complaints of severe rib pain, [and] shortness of breath." Compl. ¶¶ 44-45 (alterations in original). Shortly thereafter, plaintiff was transported by ambulance to Logan Regional Medical Center. Id. ¶ 48. Plaintiff alleges that the Logan County Emergency Ambulance Report noted that plaintiff "states the officer struck him on his left side with bare fist, injuring his rib." Id. ¶ 49.

The ER Nurse's Note from the Logan Regional Medical Center allegedly reported that plaintiff had "pain in his left rib area with abrasions to the left side of his face and head, also has dried blood and swelling to the left ear." Compl. ¶ 52. The ER Note described the "mechanism of injury" as "[a]ggravated assault with fists." Id. ¶ 54 (alteration in original). The ER Physician Note allegedly stated that plaintiff "reports he was in an altercation with law enforcement approximately 9-10 hours ago." Id. ¶ 56. Plaintiff was then allegedly diagnosed with a "traumatic" collapsed left lung, multiple fractured and displaced left-side ribs, air and blood in his chest cavity, and "legal intervention involving mishandling, suspect injured." Id. ¶ 58.

Due to the severity of his injuries, plaintiff was then transported again to Pikeville Medical Center. Compl. ¶ 59. The complaint alleges that he was admitted to the ICU with "major chest trauma" and initially diagnosed with "multiple fractures [four] of ribs, left side," "contusion of left ear," and "assault by other specified means," among other ailments. Id. ¶ 66. The ICU report also allegedly stated that plaintiff was "assaulted by police officers in Logan, West Virginia." Id. ¶ 67. Surgery was performed on May 24, 2018 to drain the collection of blood around plaintiff's left ear and a separate

surgery was performed that same day to insert a chest tube to
drain air and blood from plaintiff's left pleural cavity.  Id.
¶ 69.  Plaintiff was finally discharged on May 29, 2018.  Id.
¶ 71.

On March 26, 2019, plaintiff filed a complaint,
alleging excessive force under 42 U.S.C. § 1983 in violation of
the Fourth Amendment of the United States Constitution
(Count I), a constitutional tort in violation of the Article
III, § 6 of the West Virginia Constitution (Count II), battery
against Deputy Crum (Count III), negligence (Count IV), and
intentional infliction of emotional distress (IIED) (Count V).

Defendants move for summary judgment on all counts.
First, defendants argue that they are entitled to summary
judgment on plaintiff's claims of excessive force, negligence,
and battery because "it is not clear how [plaintiff's] injuries
were suffered" and the only direct evidence of the alleged
beating comes from plaintiff's own self-serving testimony.
Defs.' Mem. Supp. Mot. Summ. J. 5-6, ECF No. 50 ("Defs.' Mem.").
They also argue that the narratives in the medical records have
no evidentiary value because they merely reflect plaintiff's own
account of how he suffered these injuries.  Defs.' Reply 4, ECF
No. 56 ("Defs.' Reply").  Although plaintiff states that these
medical records were produced during discovery, he only offers

5

quotes of the records from his complaint.  <u>See</u> Pl.'s Am.
Resp. 6; Compl. ¶¶ 44-71.  Defendants also dispute plaintiff's
testimony that Deputy Lilly recorded the incident on his
cellphone, noting that they were unable to find the claimed
video during searches of Deputy Lilly's phone video records.
<u>See</u> Defs.' Reply 2.

      According to defendants and the eyewitness accounts of
the incident, plaintiff first approached the officers from down
the alley, yelling, screaming, and cussing at the officers in an
intoxicated state.  Lilly Dep. 34:2-14, ECF No. 49-3 ("Lilly
Dep."); Kimber Hall Dep. 20:16-19, 24:20-26:15, ECF No. 49-5
("Kimber Hall Dep."); Jenna Hall Dep. 19:22-20:4, ECF No. 49-6
("Jenna Hall Dep."); Caitlin Hall Dep. 14:19–15:7, ECF No. 49-7
("Caitlin Hall Dep."); Griffin Dep. 21:5-8, ECF No. 49-8
("Griffin Dep.").  They maintain that plaintiff lunged toward
Deputy Crum (who was ahead of Deputy Lilly), at which point
Deputy Crum grabbed plaintiff, conducted a "hip toss," and
brought plaintiff to the ground.  Crum Dep. 36:2-37:23, ECF No.
49-2 ("Crum Dep."); Deputy Lilly Dep. 41:4-14; Kimber Hall Dep.
25:19-26:21.  Deputy Crum describes this hip toss maneuver as "I
guess kind of like a headlock" and "used my legs and my back to
toss him onto the ground," landing on top of plaintiff.  Crum
Dep. 37:19-23.  After plaintiff was taken to the ground, he was

handcuffed and placed in the back of Deputy Crum's patrol car. Deputy Lilly Dep. 47:6-48:18.

Plaintiff himself testifies that he continued to yell, scream, curse, and threaten the officers when he was placed in the patrol car, though he denies that he was ever thrown to the ground.  Pl.'s Dep. 27:2-9; 28:17-30:12.  Deputy Crum testifies that he pepper-sprayed plaintiff in the backseat of the car to stop plaintiff from kicking the rear door, headbutting the glass, and spitting.  Crum Dep. 44:10-47:17.  Defendants also offer eyewitness testimony that they put a spit mask on plaintiff to stop the spitting, which plaintiff nonetheless denies ever occurred.  Deputy Lilly Dep. 52:9-11; Kimber Hall Dep. 37:1-11; Jenna Hall Dep. 25:18-26:14; Pl.'s Dep. 33:6-7. After he was transported to the Logan County Courthouse, plaintiff refused to receive medical treatment.  Sheppard Dep. 29:15-19, ECF No. 49-4.

In addition to defendants' testimony, eyewitnesses to plaintiff's arrest — Kimber Hall, her daughters Jenna Hall and Caitlin Hall, their friend Kayla Griffin, and the EMS personnel at the scene, Gloria Abade — all testify that they did not see any beating in the backseat of the patrol car.  Defs.' Mem. 6. Kimber Hall testifies that plaintiff's "allegation that after he was put back into the back seat of the police car, that Officer

Crum . . . got into the back seat of the car with him and beat him with his fist" did not occur at any point when she was observing the vehicle.  Kimber Hall Dep. 37:23-38-5.  Jenna Hall, Caitlin Hall, and Kayla Griffin all testify that neither of the defendants ever got into the backseat of the car with plaintiff, and Caitlin Hall and Kayla Griffin also testify that they never saw defendants strike plaintiff with their fist. Jenna Hall Dep. 34:19-22; Caitlin Hall Dep. 23:20-24:4; Griffin Dep. 26:16-22.  Plaintiff's testimony that he was not thrown to the ground at any point also directly conflicts with the eyewitness testimony to the contrary.

If Counts I, III, and IV fail, defendants argue that Count II should be dismissed because the West Virginia Constitution does not create an independent cause of action for money damages.  In addition, defendants seek summary judgment on the Count V IIED claim because plaintiff does not offer any corroborating testimony or medical documentation of any of the alleged emotional injuries, and, they contend, the IIED claim is duplicative of the battery claim.  Plaintiff opposes the motion for summary judgment, although he stipulates to the dismissal of his West Virginia Constitutional claim (Count II).  See Pl.'s Am. Resp. 6 n.2.

## II.  Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

III. Discussion

A. Excessive Force, Negligence, and Battery Claims

Defendants argue that plaintiff's own self-serving testimony cannot defeat summary judgment when it lacks corroborating evidence and is contradicted by all other testimony.  Defs.' Mem. 6; Defs.' Reply 7-8.  For example, in Williams v. Giant Food Inc., our court of appeals held that an employee who testified that she believed that her job performance evaluations were "unfair and untrue and incorrect" was "merely self-serving opinion that cannot, absent objective corroboration, defeat summary judgment" on her discriminatory failure to promote claims.  370 F.3d 423, 433 (4th Cir. 2004); see also Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case of [employment] discrimination.").

To be sure, conclusory allegations or mere speculation alone will not defeat a motion for summary judgment.  See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute.  Anderson, 477 U.S. at 252.  The non-moving party must

10

offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256. This requires "citing to particular parts of materials in the record, including depositions." Fed. R. Civ. P. 56(c)(1)(A).

Yet, plaintiff does not offer "mere speculation" or his "opinion" but testimony as to the facts surrounding his arrest. Giant Food found that the employee's "self-serving opinion" was insufficient to defeat summary judgment but credited her testimony insofar as it related to favorable facts. 370 F.3d at 432 (emphasis added); United States v. Johnson, 28 F. Supp. 3d 499, 512 (M.D.N.C. 2014) (rejecting argument that Giant Food stands for the proposition that the court should disregard defendant's factual testimony if it is "self-serving").

Rule 56 of the Federal Rules of Civil Procedure does not contain a corroboration requirement or necessarily bar "self-serving" testimony. The "lack [of] extensive corroborating evidence is of little import, because the volume of corroborating evidence 'relates only to the credibility and weight of the evidence, which are issues for the jury." Nnadozie v. Genesis HealthCare Corp., 730 F. App'x 151, 159–60 (4th Cir. 2018) (emphasis in original) (quoting EEOC v. Warfield-Rohr Casket Co., 364 F.3d 160, 164 (4th Cir. 2004)

(distinguishing "self-serving <u>opinions</u>" and "testimony replete with alleged <u>facts</u>" for purposes of summary judgment).

It is axiomatic that courts must not make determinations of credibility or weigh the evidence at the summary judgment stage.  <u>See</u> <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995) (citing <u>Anderson</u>, 477 U.S. at 252). "[T]he party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor." <u>Energy Corp. of Am. v. Bituminous Cas. Corp.</u>, 543 F. Supp. 2d 536, 544 (S.D.W. Va. 2008) (citing <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)); <u>see also</u> <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986) ("Plaintiff is entitled to have all her evidence considered.  Moreover, the credibility of her evidence must be assumed.").

Defendants further rely on the proposition that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); Defs.' Reply 8.  The record in <u>Scott v. Harris</u> that "blatantly contradicted" the nonmovant's version of events was

12

uncontroverted _video_ evidence.  550 U.S. 372, 380 (2007).
Therefore, the court needed to "view[] the facts in the light
depicted by the videotape."  _Id._ at 380-81.  "_Scott_ merely holds
that when documentary evidence 'blatantly contradict[s]' a
plaintiff's account 'so that no reasonable jury could believe
it,' a court should not credit the plaintiff's version on
summary judgment."  _Witt v. W. Virginia State Police, Troop 2_,
633 F.3d 272, 276–77 (4th Cir. 2011) (alteration in original)
(quoting _Scott_, 550 U.S. at 380); _see also_ _Smith v. Ozmint_, 578
F.3d 246, 254 (4th Cir. 2009) (awarding summary judgment where
an inmate's allegations and supporting affidavits were
contradicted by the video recordings of the incidents).

However, defendants offer deposition testimony — not
video evidence — to contradict plaintiff's account.  The court
may not weigh defendants' testimony or the eyewitness accounts
as more credible than plaintiff's own personal testimony.  _See_
_Tolan v. Cotton_, 572 U.S. 650, 659 (2014) (vacating summary
judgment award because "the court below credited the evidence of
the party seeking summary judgment and failed properly to
acknowledge key evidence offered by the party opposing that
motion").  "Summary judgment cannot be granted merely because
the court believes that the movant will prevail if the action is
tried on the merits."  _Variety Stores, Inc. v. Wal-Mart Stores,_

<u>Inc.</u>, 888 F.3d 651, 659 (4th Cir. 2018) (quoting <u>Jacobs v. N.C.</u>
<u>Admin. Office of the Courts</u>, 780 F.3d 562, 568 (4th Cir. 2015)).

Plaintiff also does not solely rely on his own
testimony to support his claims.  Plaintiff's medical expert,
Dr. Jeremy M. Bauer, opined in his Expert Report and
Supplemental Expert Report that plaintiff's injuries could not
have been caused by the alleged "hip toss" maneuver[2] described by
defendants, but rather was medically consistent with plaintiff's
claims of being repeatedly punched.  Pl.'s Am. Resp. 6–7; Pl.'s
Expert Report, ECF No. 54-3 ("Pl.'s Expert Report"); Pl.'s
Suppl. Expert Report, ECF No. 54-4 ("Pl.'s Suppl. Expert
Report").

Dr. Bauer opined that "1) [plaintiff's] injuries are
consistent with multiple, focused, blows to the head and left
side of his body; 2) The pattern of [plaintiff's] injuries is
inconsistent with one hip toss maneuver, or by the headlock/toss

---

[2] Dr. Bauer's report explains that the biomechanics of a hip toss
maneuver requires the thrower to wrap their right arm around the
back of the person to be thrown, grab the right arm of the
thrown person with the thrower's left hand, followed by the
thrower pulling the upper body of the person to be thrown over
the thrower's hip while rotating to the right.  Essentially, the
person being thrown performs a summersault over the thrower's
hip and "lands on their back, left side, and impacts the ground
with their back and pelvis and potentially the top of the head,
back of the head and back of the left shoulder."  Pl.'s Expert
Report 8.

maneuver described in Corporal Crum's deposition testimony;
3) Corporal Crum's and Deputy Lilly's description of the
incident provides no explanation for [plaintiff's] rib fractures
and subsequent hemopneumothorax; 4) [plaintiff] did not sustain
his injuries prior to his encounter with Corporal Crum and
Deputy Lilly; and (5) [plaintiff] did not cause his own injuries
while in the back seat of Corporal Crum's vehicle."  Pl.'s
Expert Report 11; Pl.'s Suppl. Expert Report 6.

　　　　Defendants argue that Dr. Bauer's opinion should be
discounted because Dr. Bauer's analysis "start[s] with the
assumption that Plaintiff was assaulted during his arrest by an
officer who beat him with his fists."  Defs.' Reply 4.  They
insist that Dr. Bauer does not offer an opinion as to how
plaintiff was injured, and that Dr. Bauer concedes that some of
the injuries may have resulted from plaintiff repeatedly
striking his head against the car window and restraint cage.
Id.

　　　　Plaintiff disputes that Dr. Bauer made any such
"assumption" that plaintiff was beaten by Deputy Crum.  Dr.
Bauer analyzed the diagnoses in medical records and radiological
scans and offered his opinion based on the parties' respective
accounts compared to YouTube videos of hip toss demonstrations.
Pl.'s Surreply 6, ECF No. 61.  For instance, Dr. Bauer reviewed

defendants' testimony that plaintiff hit the ground "head first" and ended up flat on his stomach.  Crum Dep. 39:6-18; Deputy Lilly Dep. 46:9 ("[Plaintiff] landed flat on his face.").  Dr. Bauer found this inconsistent with a hip toss, which results in the person landing on "the back, left side (if thrown to the thrower's left) of their body."  Pl.'s Suppl. Expert Report 3. "[O]ne blow to the face from impact with the ground would not produce the multiple bruises and abrasions to the front and left side of [plaintiff's] face."  Id.  In addition, "Corporal Crum's description of the incident would not produce [plaintiff's] head and rib injuries."  Id.

Beyond these findings, plaintiff notes that defendants have not offered a rational explanation as to how plaintiff sustained multiple traumatic injuries including four broken ribs; a punctured lung; blood in his lung, pleural, and chest cavity; and damaged left ear.  Pl.'s Am. Resp. 7.  Moreover, the court cannot discount plaintiff's own testimony regarding how he suffered his injuries.  Altogether, plaintiff has demonstrated that a genuine dispute of material facts exists regarding plaintiff's claims of excessive force, negligence, and battery. The court will therefore deny the request for summary judgment on Counts I, III, and IV.

16

B. <u>Intentional Infliction of Emotional Distress</u>

Finally, defendants assert that in addition to lacking any evidence to create a material dispute of fact, plaintiff's IIED claim is duplicative of his assault and battery claims. Defs.' Mem. 9.  An IIED claim under West Virginia law requires a showing:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, <u>Travis v. Alcon Labs., Inc.</u>, 504 S.E.2d 419, 421 (W. Va. 1998).

Plaintiff again offers his testimony of the incident, pictures of his injuries, and Dr. Bauer's expert reports to support the IIED claim.  <u>See</u> Pl.'s Am. Resp. 10.  However, plaintiff does not address West Virginia case law that precludes plaintiff from relying on the same underlying incident to support both an IIED claim and a battery claim.  In <u>Criss v. Criss</u>, the West Virginia Supreme Court of Appeals held that "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for the

tort of outrageous conduct is duplicitous of a claim for assault and battery, where both claims arise from the same event." Syl. Pt. 4, <u>Criss v. Criss</u>, 356 S.E.2d 620, 620 (W. Va. 1987); <u>see also</u> <u>Searls v. W. Virginia Reg'l Jail</u>, No. CV 3:15-9133, 2016 WL 4698547, at *4 (S.D.W. Va. Sept. 7, 2016) (holding that IIED claims are duplicative of assault and battery claims where they all stem from the same event).

Count V reincorporates the preceding allegations by reference but does not allege that the emotional distress arose out of a separate event from the battery. Compl. ¶¶ 104-110. Plaintiff may recover emotional damages on his battery claim. However, the court grants defendants' motion for summary judgment on Count V inasmuch as it is duplicative of Count III.

### IV.   Conclusion

Accordingly, it is ORDERED that defendants' motion for summary judgment be, and it hereby is, denied as to Counts I, III, and IV; and granted as to Count II and V.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: April 15, 2020

John T. Copenhaver, Jr.
Senior United States District Judge

18